BENJAMIN A. SMITH v. FIRST NATIONAL BANK OF CRETE.

FILED NOVEMBER 9, 1894.    No. 5475.

**Action to Recover Penalty for Usury:** LIMITATION.    The limitation of two years within which an action under the provisions of section 5198, Revised Statutes of the United States, may be commenced for the recovery from a national bank of twice the amount of usury paid to it, dates from the actual payment of such interest, and not from the bank's reservation of it from the original loan by way of discount.    Following *First Nat. Bank of Dorchester v. Smith*, 36 Neb., 199.

ERROR from the district court of Saline county.    Tried below before GASLIN, J.

*Abbott & Abbott,* for plaintiff in error.

*F. I. Foss, contra.*

RYAN, C.

This action was brought on the 16th day of February, 1889, in the Saline county district court to recover twice the amount of usurious interest which plaintiff alleged he had paid defendant, a national bank. There was a trial of the issues to the court, which resulted in a judgment in favor of the plaintiff for the sum of $328.28 and costs. Complaining that this was too small an amount, the plaintiff has filed in this court his petition in error, accompanied by the proper record of the proceedings in the district court, and seeks a reversal of the aforesaid judgment.

The petition upon which trial was had contained seven causes of action. In the brief of plaintiff in error it is said that there are but two questions presented, and that these pertain to the first loan made by the bank to the plaintiff. One of these questions is as to whether the usurious rate complained of was fifteen or eighteen per cent per annum. The other is whether or not plaintiff's right of action as to this item was fully barred when this suit was begun; that is, whether two years had elapsed from the time the usurious transaction occurred. It is not essential that the first of these questions be decided at this particular time.

In the petition the first cause of action was stated in the following language: "First—The plaintiff alleges that he paid to the defendant the sum of $378 as and for interest on the sum of $3,600 from the 10th day of August, 1886, to the 10th day of March, 1887; said sum of $3,600 being so much money loaned by the defendant to the plaintiff on said 10th day of August, 1886, and by the plaintiff repaid to the said defendant with said interest on the said 10th day of March, 1887." As to the history of the transaction, L. H. Dennison, cashier of the defendant in error, was sworn and testified as follows:

On the 10th day of August, 1886, Benjamin Smith ap-

plied to us for a loan, saying it was to pay for feeding some cattle during the coming winter, and we asked him how much he wanted, and he said $3,600, and we agreed to loan him that amount of money, and we took a note dated the 10th of August, 1886, running six months, or until the 10th of February, 1887, for $3,600, and charged him for it, or reserved out of it the sum of $270, being interest at the rate of one and one-fourth per cent a month. The note came due on the 10th day of February, 1887, and was not paid at that time, but Mr. Smith said that his cattle were not quite ready yet and we allowed the note to run past the time a month and two days, or, I think I testified before, the payment was made after banking hours on the 11th day of March, and so appeared on the books on the 12th day of March, 1887, and at that time he reduced the note down to $1,730.78. He paid us as interest on the $3,600 from the time the note was due until he made the indorsement of the sum of $54.

Q. That makes a total for the seven months of how much?

A. Three hundred and twenty-four dollars. This transaction run on until the 3d day of June. On the 12th day of March, or on the 11th day of March after banking hours, and it appears on the banking books of the 12th, he paid us $54 interest on the balance unpaid of the original $3,600. It was finally paid on that date, and on that date, namely, the 2d day of June, 1887, he paid us $20.72 interest and took up the note, which was the end of that transaction.

This version of the matter does not agree with that given by the plaintiff in error in his evidence. As the judgment was in favor of the bank on this cause of action, the testimony most favorable to its theory has been set out at length, and from that statement it is evident that while this suit was brought on February 16, 1886, the first payment actually made of interest was on March 11, 1887, and that the balance of the note, principal and interest, was not

48

paid until June following. From these facts it is clear that if the reservation at the date of the note, August 10, 1886, is to be deemed the occurrence of the usurious transaction, then the first cause of action was barred when this suit was brought. If, however, the plaintiff's cause of action did not arise until he actually paid the interest, no part of his cause of action arose until the 11th of March, 1887, and in that view the statute had not run against his first cause of action when this suit was begun.

In *Duncan v. First Nat. Bank of Mt. Pleasant,* a case tried in the United States district court at Pittsburgh, Pennsylvania, reported in 1 Thompson, National Bank Cases, 360, Ketcham, J., instructed the jury as follows: "From the origin of the loan, from the retaining of the first discount through all the renewals up to the time of final payment of the principal, or up to the time of entering judgments, there is a *locus pœnitentiæ* for the party taking the excessive interest. Any time till then he may consider the excessive interest paid on account of the loan, and so apply it, and lessen the principal. Up to that time he may make this election. When payment is actually made or judgment is entered, the election is made; and if, as in these cases, judgment is entered for the face amount of the notes or full amount of the loan, or payment is taken in full without any reduction by taking out the excessive interest, the cause of action is complete. The original loans in these cases were more than two years before these actions were brought, but the payment of one of the Millinger notes was made, and the judgment on the other Millinger note and the judgments on all the Duncan & Brother notes were entered, near the time of bringing these suits, less than two years before. The payment and the judgment concluded the transaction and determined their character to be usurious. Till that time it was undetermined and the statute did not begin to run."

In the case of the *National Bank of Madison v. Davis,*

reported in 6 Central Law Journal, 106, is found the opin-
ion of Gresham, J., in which he quoted the section of the
" National Bank Act" with which we have to deal.    That
part of the section which is pertinent to our purpose is
in the following language: "And the knowingly taking,
receiving, reserving, or charging a rate of interest greater
than aforesaid, shall be held and adjudged a forfeiture of
the entire interest which the note, bill or other evidence of
debt carries with it, or which has been agreed to be paid
thereon.    And in case a greater rate of interest has been
paid, the person or persons paying the same, or their legal
representatives, may recover back in any action of debt
twice the amount of the interest thus paid from the association
taking or receiving the same; *Provided*, That such action
is commenced within two years from the time the usurious
transaction occurred."    Having quoted this language,
Judge Gresham commented on it as follows: "If a na-
tional bank discount a note at a usurious rate of interest,
paying the borrower the proceeds less the interest, and suit
be brought to recover the loan, and the borrower plead the
usury, the bank will recover the face of the note less the
entire interest taken out, received, reserved, and no more.
It will thus collect the sum of money it actually paid out,
being punished for receiving interest in excess of the legal
rate by forfeiting all interest.    But if the note thus dis-
counted be renewed for the same amount, the borrower pay-
ing usurious interest out of his pocket in advance, and suit
be brought on the renewed note, the defendent may recoup
double the amount of the entire interest actually paid on re-
newal, or in an independent action of debt he may recover
from the bank double the amount of the entire interest
thus paid."

In *Higley v. First Nat. Bank of Beverly*, 26 O. St., Mc-
Ilvaine, J., on pages 79 *et seq.*, made use of the following lan-
guage in reference to that part of the section of the bank-
ing act above referred to: "By the first provision in that

part of the section above quoted, if the contract or promise
to pay usurious interest be unexecuted, it cannot be enforced;
and in such case the debtor is released from the payment,
not only of the interest in excess of the lawful rate, but
'the entire interest which the note, bill, or other evidence
of debt carries with it, or which has been agreed to be paid
thereon,' must, be held and adjudged to be forfeited.   By
the latter provision, if usurious interest 'has been paid,'
twice the amount of interest paid may be recovered back
from the association 'taking or receiving' it, provided the
action therefor be commenced within two years from the
time the usurious transaction occurred.   And by construing
the whole section together, we are inclined to believe that in
case usurious interest has been 'reserved' at the time of the
loan or discount, there is left to the bank a *locus pœnitentiœ.*
In such case the bank may, upon receiving payment of the
debt, discharge itself from all liability to the debtor by
giving credit for the amount of interest reserved; other-
wise the debtor may insist upon a reduction of his indebt-
edness to the amount actually loaned or advanced, or he may
pay the whole claim, and afterwards, within two years, re-
cover back twice the amount of interest paid."

The views above expressed find support in the case of
*Shinkle v. First Nat. Bank of Ripley,* 22 O. St., 516.   We
do not concur in all the views expressed in the cases above
cited, for some of them have been modified by later adjudi-
cations.   In so far, however, as they hold that the right to
a recovery of twice the amount paid shall be measured by
the fact of payment in fact and not constructively, we con-
cur in the principles above announced.   Any other rule
would recognize the right of the maker of a note to a na-
tional bank to recover from such bank twice an amount
which he has not in fact paid, and perhaps may never be
able to pay.   Not only on principle, but by its own adju-
dications as well, this court is bound to give to the section
hereinbefore referred to the construction which is above

held applicable specially to the statute of limitations, for in respect to it the following language was used by NOR-VAL, J., in *Hall v. First Nat. Bank of Fairfield*, 30 Neb., 103: "It is apparent that this section covers two classes of cases. The last clause provides that when illegal interest has been paid to a national bank, double the amount so paid may be recovered back, while under the first clause of the section, if usurious interest has been knowingly charged and not paid, a recovery can only be had for the amount borrowed; in other words, where illegal interest has been added into the note but not paid, it cannot be recovered in an action brought for that purpose. (*Brown v. Second Nat. Bank of Erie*, 72 Pa. St., 209.)" (See, also, *First Nat. Bank of Dorchester v. Smith*, 36 Neb., 199.) As the refusal of the district court to render judgment for the amount of the first cause of action pleaded was obviously founded upon a construction of the statute entirely at variance with that above given, it results that its judgment must be, and is,

REVERSED.